IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LUKE JOHN SCOTT, SR.<br><br>Plaintiff,<br><br>vs.<br><br>KEITH K. et al.,<br><br>Defendants. | CV 20-00014-GF-BMM-JTJ<br><br><br>FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES<br>MAGISTRATE JUDGE |

Plaintiff Luke Scott is a federal detainee proceeding pro se on civil rights claims under 42 U.S.C. § 1983. The Court previously screened his Complaint and advised him that it failed to state a claim but gave him an opportunity to amend the Complaint. (Doc. 5.) After various extensions, Scott filed his Amended Complaint on February 17, 2021. (Doc. 14.) For the following reasons, the Court now recommends dismissal of the Amended Complaint.

## I. STATEMENT OF THE CASE

The Court's prior order provided the factual background of Scott's case, and it will not be repeated here except as relevant to the following analysis. The events at issue in Scott's Amended Complaint occurred while he was a pretrial detainee at the Cascade County Detention Center (CCDC). He names the following CCDC Defendants: Captain Keith K., Lieutenant Grubbs, Corporal Pottrats, Corporal Ruiz, Correctional Officer Frank, and Dr. Jorgensen. Scott's Amended Complaint

adds Planned Parenthood, CCDC itself, C.O. Daebler, and Corporal Miller as defendants on his medical care claim.

### III.  ANALYSIS

Mr. Scott is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. § 1915 and § 1915A. The Court laid out the screening standard in its prior order. (Doc. 5.)

#### A.  Access to the Legal Library

The Court previously concluded that Scott's only possibly viable claim under Count I was a Sixth Amendment claim for the right to self-representation in a criminal case. *Faretta v. California*, 422 U.S. 806 (1975). As the Court pointed out previously, if a § 1983 claim existed based on an interference with a criminal defendant's *Faretta* right (without concluding it does), a plaintiff must still allege how he was harmed by any interference with the *Faretta* right. Scott must set forth the particulars of how the defendants interfered with the right and how he was harmed.  Scott's original Complaint did not contain that information, and he was provided the opportunity to amend to allege sufficient facts to state a claim.

Scott's elaborations in his Amended Complaint similarly do not satisfy this burden. He again alleges in generalities that the defendants prevented him from proceeding with his criminal legal actions as he would prefer, but he has alleged no specific facts to support the claim. Further, the Court takes judicial notice of the

2

fact that his criminal proceedings have concluded. If he could allege specific injuries or obstacles to his self-representation, he would have been able to in his Amended Complaint. He has failed to state a claim, and his claim should be dismissed.

### B.  Placement in Administrative Segregation

Scott alleges Defendants Pottrats, Ruiz, and Frank locked him down indefinably under the "façade of facility safety" without affording him due process. Scott's elaboration of this claim in his Amended Complaint adds a supervisory claim against Defendants Grubb and K., asserting that they "allowed" these behaviors of their subordinates. (Doc. 14-1 at 6.)

The Court previously advised Scott that, in assessing whether restrictions on pretrial detainees comport with due process, "[a] court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Legitimate government objectives include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained." *Id*. at 540; *see generally Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (listing relevant factors in this analysis).

The Court advised Scott that he had not alleged sufficient facts to plausibly assert that the restrictions here are "not reasonably related to a legitimate goal," and he had not alleged sufficient facts for the Court to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Bell*, 441 U.S. at 539.

He was given an opportunity to amend his Complaint to clarify the precise nature of his due process claims, provide further explanation why he was placed in administrative segregation, what procedures were and should have been followed regarding that placement, why the stated reason of facility security was a façade, the conditions in administrative segregation, how long he was in administrative segregation, and what role each of the named defendants had in his placement in administrative segregation. (Doc. 5 at 14.)

Scott's Amended Complaint attempts to fulfill these requirements, but he still fails to state a claim. His Amended Complaint refers to the C.C.D.C. handbook's provisions regarding discipline and states there is "no enforceable statute" when it comes to a classification based on safety and security. (Doc. 14-1 at 2.) He also asserts that he is being "punished for asking to use the law library[.]" (Doc. 14-1 at 2.) Attached to Scott's Amended Complaint is a letter to his standby counsel in his criminal action that explains the reasons for Scott's placement; the letter accords with the responses Scott received to his kites, attached to his original

complaint.[1] Scott has failed to sufficiently allege a claim that his classification was anything but a legitimate penological decision related to a security issue.  The claim should be dismissed.

### C.  Denial of Medication

The Court evaluates a pretrial detainee's Fourteenth Amendment denial of medical care claim under an objective deliberate indifference standard.  *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (applying objective standard to medical care claims and describing similar treatment afforded medical care and other conditions of confinement claims). Scott's Amended Complaint alleges that Wellbutrin is the only medication he has tried that effectively treats his diagnosed depression. He states that he was prescribed Wellbutrin when he was at a different correctional facility for a short time, but the drug was discontinued when he transferred back to CCDC. (Doc. 14-1 at 3.) Scott asserts both that Dr. Jorgensen tried to change Scott's drug, and Scott was unable to see a mental health provider for nine months. *Id.* But then he confusingly later says that he *has* seen a mental health provider, Jessica Martinez. (Doc. 14-1 at 9.))

Scott asserts that Corporal Miller, in his official capacity, knew that Scott

---

[1] Scott was advised in this court's prior order that his amended complaint would completely replace his original complaint, and therefore, the court is not obliged to refer back to any other filing that was not refiled with the amendment. However, in this instance, the Court is simply affirming what it had already reviewed, that the reason was security and not discipline.

would suffer from not having his medication and did nothing. (Doc. 14-1 at 8.)

Scott also names Planned Parenthood (PP) in his Amended Complaint as the

medical provider of the CCDC. Scott asserts that PP switched the Wellbutrin to

Effexor, which has side effects for him. He also asserts that C.O. Daebler, in her

official capacity, wrote Scott up for "cheeking" his Wellbutrin. The relevance of

this is unclear, especially given that his general complaint is that he was not given

Wellbutrin. (Doc. 14-1 at 10-11.) Finally, he asserts his medical claims against

CCDC itself.

Scott's somewhat scattershot allegations fail to state a claim. His

amendments are generally responsive to the Court's prior suggestions, specifying

the medications involved and stating the harm he anticipated. But he only vaguely

asserts that Jorgensen knows the "dangers and risk of not treating chronic

depression," without specifically describing any interaction between the two or any

specific actions or inactions of Jorgensen. (Doc. 14-1 at 7.) He does not allege that

his depression is not being treated, or that he was, in fact, suicidal. (In fact, he

clearly asserts the opposite. (Doc. 14-1 at 11.)) Simply put, he does not establish

that anyone has been objectively indifferent to his needs; the treatment is simply

not his ideal. His Amended Complaint is too vague and contradictory to pass Rule

8 muster and should be dismissed.

In addition, Scott has attempted to add defendants who likely cannot be

sued. In Montana, a detention center is defined as "a facility established and maintained by an appropriate entity for the purpose of confining arrested persons or persons sentenced to the detention center."  Mont. Code Ann. § 7–32–2120.  "The Detention Center is merely a building, it is not a person or legally created entity capable of being sued." *Barnes v. Yellowstone County Detention Facility*, 2008 WL 5412448 (D. Mont. 2008). *See also Allison v. California Adult Authority*, 419 F.2d 822. 823 (9th Cir.1969) (California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); *Tyler v. Sullivan*, 83 F.3d 433 (10th Cir.1996) ("The [district] court dismissed the detention facility as a defendant, finding that the facility, a building owned and operated by the county, is not a person or legally created entity capable of being sued."). CCDC should be dismissed as a defendant.

Further, Scott probably cannot state a claim against PP in this context. As a private actor, generally speaking, Planned Parenthood is not liable under § 1983. However, private doctors and hospitals contracting "with a public prison system to provide treatment to inmates" perform a public function and thus act under color of state law. *Long v. Corizon Health, Inc.*, No. 17-00898, 2018 WL 5962499, at *4 (E.D. Cal. Nov. 14, 2018), *report and recommendation adopted*, 2018 WL 6528421 (E.D. Cal. Dec. 12, 2018). In contrast, as Scott was a federal detainee, the jail was functioning in a federal capacity as to him, and he cannot state a § 1983

claim against a private entity in this context. Because Mr. Scott was in federal custody at all times giving rise to his allegations, his medical claims would potentially arise under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the "federal analogue" to § 1983. *Hartman v. Moore*, 547 U.S. 250, 254, 255 n.2 (2006).  However, in *Correctional Services Corp. v. Malesko*, the Supreme Court declined to create an implied damages remedy in an Eighth Amendment suit against a private prison. 534 U.S. 61, 63 (2001). Therefore, it is unclear at this point whether a suit regarding medical care would be viable against PP in Scott's circumstances, but, given that his allegations on their face fail to state a claim for deliberate indifference to his medical needs, the Court need not resolve the issue at this point.

### D.  Equal Protection

In order to state a § 1983 claim based on a violation of the Equal Protection Clause, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one").

Despite being given an opportunity to amend, Scott does not allege he is a member of any suspect or protected class, and he fails to allege that any defendant

denied plaintiff any rights based on membership in any suspect or protected class. Scott also fails to allege discriminatory intent by any named defendant. He ascribes ill intent to various officials by their commentary, but disrespectful behavior does not amount to a constitutional violation. He reasserts that he was treated differently from state prisoners, but that distinction is insufficient to support an equal protection claim. This count should be dismissed.

## V.  CONCLUSION

The Court has determined that Scott's Amended Complaint fails to state a claim and therefore should be dismissed.

Based on the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.     Scott's Complaint should be dismissed with prejudice as failing to state a claim.

2.     The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.     The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

4.      At all times during the pendency of this action, Scott must immediately advise the Court of any change of address and its effective date.

Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen days after service (mailing).[1] 28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.  This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 13th day of September, 2021.


   _/s/ John Johnston_
John Johnston
United States Magistrate Judge

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Scott is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.